Our next case for argument is United States v. Fadiga. Good morning, Your Honor.  Michael Bosch for the appellant Mohamed Fadiga. On March 17, 2015, a Holbrook police officer, which is in Lake County, Indiana, was on I-65 in Jasper County, about 35 miles away from the city. He was part of a task force called the Domestic Highway Enforcement Task Force, which has also been described as an interdiction task force. They're searching for crime. He saw a vehicle go by that had expired license plate. In Indiana, you've only got the rear license plate. He pulled the car over, made the stop. He eventually issued a warning ticket. But on cross-examination, he admitted that he had run the plate before he approached the vehicle. He knew the car wasn't stolen. He knew who owned the car. He issued his ticket. That should have been it. But instead, since the driver did not have sufficient information for him, he went back to see the passenger. He asked the passenger for his identification. He opened his wallet, and the officer said, I saw all kinds of cards sticking every which way out of his wallet. From there, he asked permission to search the vehicle. Allegedly, both the driver and the passenger agreed to it, and he found many more cards and cigarettes. I think we're beyond the allegedly part because there were factual findings. We are. The jury bought into that. Well, actually, the suppression motion ruling made factual findings. My point only is that this wasn't a normal traffic stop. This officer was far away from his home city. He was out looking for crime. Everything he did after he issued the ticket was an attempt to prolong the stop until he could find some reasonable suspicion. The possibility that the cards were false, I don't believe that arises to a reasonable suspicion. A possibility is not a reasonable suspicion. And you're absolutely right, Your Honor. Once the suppression hearing was lost, we were doomed to fail at trial. No question about it. But something happened the day of trial. My client is African American. We had a veneer of 48 people. There were no African Americans in that veneer. The Hammond Division of the U.S. District Court entails Lake and Porter Counties, which between those two counties has an overall percentage of 19% black population. So I should have had approximately nine African Americans in my veneer. The lead case is... Where does that figure come from? Approximately 20% of 48. That's not the way statistics work. You assume, say, an urn with 800 white balls and 200 black balls, and then you draw it random, and you get a probability distribution of outcomes. Have you conducted that analysis? I have not. The probability distribution will assign a probability to getting zero black, anywhere up to 48 black. But you don't. In fact, a statistician would tell you that the one thing that almost certainly won't happen is just to divide one number by another, and you get that. It's the same as the rule that if you flip a coin 100 times, you will not get 50 heads and 50 tails. It just won't happen.  I don't disagree with that at all. I would think you would get tails once or twice out of 100. The lead cases, as both my brief and the government's brief point out, is Durham versus Missouri, and there they were able to produce statistics that showed that females were excluded far more than males over the course of the year because they were able to get those records. This circuit has said... Did you bring a challenge under the terms of the Jury Selection and Service Act? No. No. What I'm saying... Well, we have said, I think quite frequently, that if the Jury Selection and Service Plan is proper and not contested, the fact that a particular panel comes up with a disproportion by race or sex or religion or you name it, just doesn't matter. And that, of course, is what the district courts said here, and that's why I ask the question, have you brought the challenge that the plan is defective or slanted or biased or anything like that? Well, as I mentioned, there is an impossibility of doing that because those statistics... There is a statutory provision for exactly how that's to be done. It's 28 U.S.C. 1867. It tells you how it's to be done. It's not impossible. The clerk keeps no records as to race. Then the clerk is in violation of the statute. Now, if you want to bring a challenge saying the clerk is violating the statute by not keeping records, that might be a good challenge. But you've already told me you haven't brought a statutory challenge to the way the plan is implemented. And I apologize. I didn't know what to do once the clerk told me they don't keep those records. You read the statute, counsel. Thank you, Your Honor. I have nothing further. Mr. Bosch, you sit at counsel table. Mr. Holler. Thank you. Good morning, Your Honors, and may it please the court. I think for the reasons that the court has explored, the district court properly denied both the suppression motion and the jury selection claim. The initial stop was justified by an expired plate. It's proper for people to stop people for those kinds of violations. Rodriguez itself said that during such a stop, you can ask questions about driver's license registration information. That is what was asked here. And while Mr. Fadiga and Mr. Berry fumbled around and tried to find that information, the officer was perfectly free to ask as many questions as he wanted, related or unrelated to the stop. He did so. He did not extend the stop. At that point, Robinette and Chan, this court's decision in Chan and the Supreme Court's decision in Robinette kick in. The stop is over. They can ask for consent. They did. They didn't even have to have. I mean, you can ask a question without suspicion at all. But as both Judge Lozano and Judge Simon found, there was plenty of reasonable suspicion here, with a card bursting full of wallets and with strange and odd travel plans. A wallet bursting with cards. Huh? You said it in reverse. It's the wallet that was bursting with cards. I apologize. A wallet bursting with cards. You didn't mislead me. Okay. So at any rate, there's plenty of reasonable suspicion here. There's plenty of consent here, and there's plenty of traffic violations here. So there's no valid suppression claim. On the jury selection issue. That's already done. It's done. I mean, he, you know, there's no claim. This court said so in Ashley, Guy, Phillips. The cases are legion. The district court has changed its jury selection plan and does now look at a broader range of documents. And to the extent that, you know, defense attorneys or others in the community are concerned about that, the court has done so to the extent that somebody wants to raise a claim or an attack on the jury will, they can do so. But the defense counsel in his own brief on page 10 says, it is undisputed the instant veneer was randomly selected from voter lists pursuant to an authorized plan. That is the claim. I have nothing further. We would ask that you affirm. Thank you very much, counsel. Anything further, Mr. Bosch? Well, Mr. Bosch, we appreciate your willingness to accept the appointment in this case.